[No. 61963-2-I.   Division One.   April 13, 2009.]

THE STATE OF WASHINGTON, *Appellant*, v. DONALD WAYNE SHUFFELEN, *Respondent*.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Dennis J. McCurdy, Deputy*, for appellant.

*David B. Koch* (of *Nielsen, Broman Koch, PLLC*), and *Kari L. Dady*, for respondent.

¶1 LEACH, J. — The State appeals the trial court's order suppressing identification evidence and dismissing the charge of violating a no-contact order against Donald Shuffelen. The State argues that the court erred in holding that Mr. Shuffelen's rights under article I, section 7 of the Washington State Constitution were violated when a police officer asked Ms. Shuffelen to identify the passenger in the car she was driving. The State also argues that the court erred in holding that the officer's questioning of Ms. Shuffelen violated her rights under the Fifth Amendment to the United States Constitution. Finally, the State contends that the trial court erred in ruling that the spousal incompetency rule, RCW 5.60.060(1), barred Ms. Shuffelen from

testifying at the joint CrR 3.5 and 3.6 hearing. Because Mr. Shuffelen lacks standing to challenge the officer's questioning of Ms. Shuffelen under article I, section 7 and the Fifth Amendment, we hold that the trial court erred in suppressing the identification of Ms. Shuffelen's passenger. The trial court also erred in barring Ms. Shuffelen from testifying since the victim exception to the spousal incompetency rule applies. We reverse the trial court's order granting suppression and dismissal.

## Background

¶2 On January 26, 2008, at approximately 10:40 p.m., Susan Shuffelen drove her Nissan Stanza southbound out of an Albertson's supermarket parking lot onto Southeast 208th Street in King County.[1] To turn left onto 108th Avenue Southeast, Ms. Shuffelen drove across two traffic lanes into the left turn lane and stopped at the intersection of 208th Street and 108th Avenue. She did not signal until she reached the left turn lane.

¶3 On patrol duty, Deputy Eric Lux observed Ms. Shuffelen cross the two lanes without signaling. He activated his lights and pulled Ms. Shuffelen over into a parking lot on the west side of 108th Street for failing to use the appropriate turn signal or to manually signal the turn. While pulling over Ms. Shuffelen, Lux asked the radio dispatcher to run her license plate.

¶4 Lux approached Ms. Shuffelen and noted a white male in the front passenger's seat. Primarily focused on Ms. Shuffelen, Lux told her that she had failed to signal and requested her driver's license, registration, and proof of insurance. Ms. Shuffelen produced her driver's license but was unable to provide registration and proof of insurance.[2]

---

[1] Ms. Shuffelen was the registered owner of the car.

[2] The State contests the trial court's finding of fact that Ms. Shuffelen provided registration and proof of insurance. The transcript of the CrR 3.5 and 3.6 hearing shows that Ms. Shuffelen was unable to provide registration and proof of insurance.

Lux returned to his patrol car and asked the radio dispatcher to run Ms. Shuffelen's driver's license. He also checked her driving status on his mobile data terminal. The dispatcher relayed to Lux that Ms. Shuffelen's license was suspended in the third degree and there was a no-contact order protecting her. Lux learned that Ms. Shuffelen was the petitioner in the no-contact order and that the respondent was a Mr. Shuffelen, a white male, born in 1960.

¶5 About this time, Deputy Martin Duran arrived to assist Lux. Before his arrival, Duran heard dispatch relaying information regarding Ms. Shuffelen's license plate, her suspended driver's license, and the details of the no-contact order. Duran ran Ms. Shuffelen's license plate on his mobile data terminal and pulled up more information about the no-contact order. Duran learned that the full name of the respondent was Donald Shuffelen and obtained information about Mr. Shuffelen's height, weight, eye color, and hair color. Duran also learned that Mr. Shuffelen had two outstanding Department of Corrections warrants for his arrest and was considered an officer safety concern.

¶6 Upon his arrival, Duran parked his car to the right of Lux's patrol car. He exited his car and stood at the right rear of Ms. Shuffelen's car. From that location, he could see the back of the passenger and was able to identify him as a white male. No other identifying characteristics could be seen from this point.

¶7 Lux informed Ms. Shuffelen that she was under arrest for driving with a suspended license and directed her to get out of the car. As she was exiting the car, Lux asked her for the name of the passenger. Lux testified that he did this to determine whether the passenger was the respondent in the no-contact order. She replied, "Donald." When Lux asked her for Donald's last name, Ms. Shuffelen said that she did not know. Lux handcuffed her and placed her in his patrol car.

¶8 When Duran heard Ms. Shuffelen tell Lux that the passenger's name was Donald, he approached the passenger, noted that the passenger matched the physical descrip-

tion of the respondent in the no-contact order, and asked for his name and driver's license. Duran testified that he did this to investigate whether the passenger was the respondent in the no-contact order. The passenger said that he did not have his driver's license with him, but stated that his name was Ronald Miller and provided a date of birth.

¶9 Duran ran the name Ronald Miller and the date of birth through radio dispatch and was told that there was no record associated with this information at the Department of Licensing. Duran returned and asked the passenger to confirm the information and was given a different date of birth. Duran ran this information through dispatch with the same result.

¶10 Ordering the passenger out of the vehicle, Duran handcuffed and detained him to further investigate his identity. Duran ran the name Donald Shuffelen through the database on his mobile data terminal and obtained a photograph of Mr. Shuffelen that matched the passenger. Duran then arrested Mr. Shuffelen for violating the no-contact order. A search of his person yielded a Washington State identification card bearing the name of Donald Shuffelen.

¶11 On May 19 and 20, 2008, a joint CrR 3.5 and 3.6 hearing was held. Mr. Shuffelen did not testify and asserted that Ms. Shuffelen was barred from testifying against him under the spousal incompetency rule. The court determined that Ms. Shuffelen elected not to testify. The court heard testimony from Lux, Duran, and Penny Cole, a private investigator retained by Mr. Shuffelen.

¶12 The court held that Lux had a reasonable and articulable suspicion to believe that Ms. Shuffelen violated the traffic statutes, RCW 46.61.305 and .310. Therefore, Lux had lawfully obtained Ms. Shuffelen's license and run it through dispatch. After learning that her license was suspended in the third degree, the court held that Lux had probable cause to arrest Ms. Shuffelen for driving with a suspended license.

¶13 But the court held that, at the time of arrest, Lux did not have a reasonable, articulable suspicion that the passenger was the respondent in the no-contact order. Therefore, Lux's questioning of Ms. Shuffelen about the passenger's identity "violated the passenger's rights under Art.1 [sic], Sec. 7 of the Washington State Constitution as held in *St[ate] v. Allen*, 138 Wn. App. 4[6]3, 157 P.3d 893 (2007)."

¶14 The court further ruled that because Lux had not read Ms. Shuffelen her *Miranda*[3] rights before asking her for the passenger's identity, Lux's questioning violated Ms. Shuffelen's rights under the Fifth Amendment and article I, section 22 of the Washington State Constitution.

¶15 With respect to Duran, the court stated that Duran's approach and subsequent investigation of the passenger's identity "on a more likely than not basis, occurred as a result of learning from Ms. Shuffelen, in response to Deputy Lux's questioning, that the passenger's name was Donald." The court determined that Duran, before hearing that identification, did not have a reasonable suspicion that the passenger was the respondent in the no-contact order. The court therefore held that Duran's investigation of the passenger's identity "violated the passenger's Art.1, Sec. 7 rights as held in *St[ate] v. Allen, supra*." The court reasoned that Duran's identification of Mr. Shuffelen was "the fruit of the illegal questioning of Ms. Shuffelen about the passenger's identity and the illegal detention of the defendant to investigate his identity without having a reasonable suspicion that he committed a crime."

¶16 Finally, the court held that the spousal incompetency rule, RCW 5.60.060(1), barred Ms. Shuffelen from testifying against Mr. Shuffelen. The court stated that the "victim exception announced in *State v. Thornton*, 119 Wn.2d 578, 835 P.2d 216 (1992), does not apply as Ms. Shuffelen does not seek the opportunity to testify against her husband, and she is not a victim in the common sense described in *Thornton*."

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

¶17 The court granted Mr. Shuffelen's CrR 3.6 motion to suppress all testimony by Lux and Duran identifying him as the passenger in the car and all statements made by Mr. Shuffelen during the traffic stop. The court also granted Mr. Shuffelen's motion to bar Ms. Shuffelen from testifying under the spousal incompetency rule. Without sufficient evidence for the State to proceed, the court dismissed the case with prejudice. The State filed a motion for reconsideration, which the court denied on June 11, 2008.

## Standard of Review

¶18 We review a trial court's conclusions of law at a suppression hearing de novo.[4] Challenged findings of fact are reviewed for substantial evidence, which is enough evidence to persuade a fair-minded, rational person of the truth of the finding.[5] We treat unchallenged findings as verities on appeal.[6] The findings must, in turn, support the conclusions of law.[7] We also apply de novo review to the issue of whether an interrogation was custodial.[8]

## Discussion

### A. Article I, Section 7 Violation

¶19 The State challenges the trial court's ruling that Lux's questioning of Ms. Shuffelen violated Mr. Shuffelen's rights under article I, section 7.[9] Specifically, the State contends that Mr. Shuffelen lacks standing to challenge the

---

[4] *State v. Carter*, 151 Wn.2d 118, 125, 85 P.3d 887 (2004).

[5] *State v. Vickers*, 148 Wn.2d 91, 116, 59 P.3d 58 (2002).

[6] *State v. Gaines*, 154 Wn.2d 711, 716, 116 P.3d 993 (2005).

[7] *Vickers*, 148 Wn.2d at 116.

[8] *State v. Lorenz*, 152 Wn.2d 22, 30, 93 P.3d 133 (2004).

[9] Article I, section 7 of the Washington State Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law."

legality of Lux's questioning of Ms. Shuffelen. Mr. Shuffelen asserts that he has standing under *State v. Allen*.[10]

¶20 This reliance, however, is misplaced because *Allen* does not address standing. In that case, Officer Mike Lowrey stopped Peggy Allen for driving with a defective license plate light.[11] After obtaining her personal information, Lowrey learned that Ms. Allen was the petitioner in a no-contact order and that the respondent was Ryan Allen.[12] Lowrey then asked Ms. Allen to identify her passenger, suspecting he was the respondent in the no-contact order.[13] Upon discovering that the passenger was Ryan Allen, Lowrey searched the car and found methamphetamine.[14] Mr. Allen was charged with possession of methamphetamine and violation of a no-contact order.[15] At a CrR 3.6 hearing, the trial court found that Lowrey's questioning of Ms. Allen was lawful and denied the motion to suppress the identifying information obtained from Ms. Allen.[16]

¶21 On appeal, Division Two reversed, holding that Lowrey had exceeded his authority in questioning Ms. Allen, so she was not a lawful, independent source of information.[17] The *Allen* court concluded that the trial court should have suppressed the identifying information obtained from Lowrey's questioning of Ms. Allen.[18] In reaching this conclusion, the *Allen* court expressly stated that it did not address standing under article I, section 7. "Because we hold the trial court should have suppressed the evidence under the derivative exclusionary rule, we do

---

[10] 138 Wn. App. 463, 157 P.3d 893 (2007).

[11] *Allen*, 138 Wn. App. at 466.

[12] *Allen*, 138 Wn. App. at 466.

[13] *Allen*, 138 Wn. App. at 466.

[14] *Allen*, 138 Wn. App. at 467.

[15] *Allen*, 138 Wn. App. at 467.

[16] *Allen*, 138 Wn. App. at 467.

[17] *Allen*, 138 Wn. App. at 471.

[18] *Allen*, 138 Wn. App. at 471.

not address Allen's argument that he has automatic standing to raise Peggy's constitutional rights."[19] Thus, Mr. Shuffelen cannot rely on *Allen* because it does not address standing.

¶22 Before this court can consider whether Lux's identification request constitutes an unconstitutional seizure, we must first determine whether Mr. Shuffelen has standing to object to the legality of that request.[20] "[R]esolution of a motion to suppress requires a two-part inquiry: (1) whether a defendant has standing to challenge the police conduct; and (2) whether the police conduct is contrary to the constitutional protections and guarantees."[21]

¶23 Here, the State argues that Mr. Shuffelen cannot rely on automatic standing to challenge Lux's questioning of Ms. Shuffelen.[22] According to the State, the automatic standing doctrine does not apply because (1) this case does not involve a possessory crime and (2) the doctrine does not confer standing upon parties whose article I, section 7 rights are indirectly violated. On both points, we agree.

¶24 First, in *State v. Simpson*,[23] a plurality of our Supreme Court stated that a defendant has automatic standing under article I, section 7 to challenge a search or seizure if "(1) the offense with which he is charged involves

---

[19] *Allen*, 138 Wn. App. at 471 n.7.

[20] *Alderman v. United States*, 394 U.S. 165, 172-74, 89 S. Ct. 961, 22 L. Ed. 2d 176 (1969).

[21] 12 Royce A. Ferguson, Jr., Washington Practice: Criminal Practice and Procedure § 2402, at 533 (3d ed. 2004).

[22] The automatic standing doctrine remains valid under the Washington State Constitution through the plurality opinion in *State v. Simpson*, 95 Wn.2d 170, 622 P.2d 1199 (1980); *State v. Jones*, 146 Wn.2d 328, 332, 45 P.3d 1062 (2002) (citing *Simpson* for the two-part test for automatic standing); *State v. Williams*, 142 Wn.2d 17, 22, 11 P.3d 714 (2000) ("Although defunct in the federal courts, automatic standing still maintains a presence in Washington."); *State v. Carter*, 127 Wn.2d 836, 850-51, 904 P.2d 290 (1995) (disagreeing with Division One's abandonment of the automatic standing doctrine); *State v. Coss*, 87 Wn. App. 891, 896, 943 P.2d 1126 (1997) ("We firmly believe automatic standing is still the law in the State of Washington.").

[23] 95 Wn.2d 170, 622 P.2d 1199 (1980).

possession as an 'essential' element of the offense; and (2) the defendant was in possession of the contraband at the time of the contested search or seizure."[24] Mr. Shuffelen cannot meet either of these requirements since he was charged with a nonpossessory offense, felony violation of a no-contact order.

¶25 Second, in *State v. Williams*,[25] our Supreme Court declared that the automatic standing doctrine applies only when the defendant is asserting that his or her own rights were violated: "Inherent in the conditions for automatic standing is the principle that the 'fruits of the search' bear a direct relationship to the search the defendant seeks to contest."[26] Accordingly, in that case, the court stated that Harlan Williams had standing to challenge the search of his person but lacked standing to challenge police officers' entry into a third party's apartment to serve an arrest warrant on him.[27] The court emphasized that "[a]utomatic standing is not a vehicle to collaterally attack every police search that results in a seizure of contraband or evidence of a crime."[28] Similarly, in this case, Mr. Shuffelen lacks standing to challenge Lux's questioning of Ms. Shuffelen, and he cannot rely on automatic standing to collaterally attack the questioning that resulted in his identification. Therefore, the trial court erred in holding that Lux's questioning of Ms. Shuffelen violated Mr. Shuffelen's rights under article I, section 7.

## B. Fifth Amendment Violation

¶26 The State similarly argues that Mr. Shuffelen lacks standing to challenge Lux's questioning of Ms. Shuffelen as a violation of her Fifth Amendment rights. We agree that a person does not have standing to raise a

---

[24] *Simpson*, 95 Wn.2d at 181.

[25] 142 Wn.2d 17, 23, 11 P.3d 714 (2000).

[26] *Williams*, 142 Wn.2d at 23.

[27] *Williams*, 142 Wn.2d at 23.

[28] *Williams*, 142 Wn.2d at 23.

violation of another's Fifth Amendment rights. For example, in *State v. Gutierrez*,[29] Marvin Warren and Bonifacio Gutierrez were arrested after they were seen leaving a trailer where cocaine and marijuana were later found.[30] After both men were read their *Miranda* rights, Warren was asked about the drugs found in the trailer, and he responded that he would rather not talk about it.[31] At trial, the State called a police officer, who testified that Warren had said he would rather not talk about it.[32] Warren and Gutierrez were both convicted of the drug offenses charged.[33]

¶27 On appeal, Division Three reversed, holding that Warren's due process rights were violated when the State introduced testimony regarding his post-*Miranda* assertion of his right to remain silent.[34] But the court rejected Gutierrez's argument that his due process rights had also been violated: "Because *Miranda* warnings are based on the Fifth Amendment privilege against self-incrimination, and because Fifth Amendment rights are purely personal rights, Gutierrez does not have standing to raise a violation of Mr. Warren's due process rights."[35] Here, for the same reasons, Mr. Shuffelen does not have standing to raise a violation of Ms. Shuffelen's due process rights.

¶28 Even if Mr. Shuffelen had standing, Lux's questioning was not equivalent to interrogation. Not every question posed in a custodial setting is equivalent to

---

[29] 50 Wn. App. 583, 749 P.2d 213 (1988).

[30] *Gutierrez*, 50 Wn. App. at 585-86.

[31] *Gutierrez*, 50 Wn. App. at 586.

[32] *Gutierrez*, 50 Wn. App. at 586.

[33] *Gutierrez*, 50 Wn. App. at 588.

[34] *Gutierrez*, 50 Wn. App. at 591.

[35] *Gutierrez*, 50 Wn. App. at 592 (citing *United States v. Cardenas Alvarado*, 806 F.2d 566, 574 (5th Cir.1986)).

interrogation requiring *Miranda* warnings.[36] The test is "whether 'under all of the circumstances involved in a given case, the questions are reasonably likely to elicit an incriminating response from the suspect.' "[37] While this test is objective, the subjective intent of the agent is relevant but not conclusive.[38] The relationship of the question asked to the crime suspected is highly relevant.[39]

¶29 Here, the circumstances show that Lux's questioning was not equivalent to interrogation requiring *Miranda* warnings. Lux's questioning focused on Mr. Shuffelen, not Ms. Shuffelen. Lux testified that his motivation for asking Ms. Shuffelen for the identity of her passenger was to determine whether the passenger was Mr. Shuffelen. This question was not related to any suspected criminal activity by Ms. Shuffelen. Nor was this question violative of Ms. Shuffelen's rights simply because it was unrelated to Lux's justification for the initial traffic stop.[40]

¶30 In conclusion, the trial court erred in holding that Lux's questioning of Ms. Shuffelen violated her Fifth Amendment rights because Mr. Shuffelen lacks standing to assert these rights and Lux's questioning does not amount to interrogation.

## C. Spousal Incompetency Rule

¶31 Finally, the State argues that the trial court erred when it held that the spousal incompetency rule, RCW

---

[36] *State v. Bradley*, 105 Wn.2d 898, 903-04, 719 P.2d 546 (1986) (citing *United States v. Gonzalez-Mares*, 752 F.2d 1485, 1489 (9th Cir. 1985)).

[37] *Gonzalez-Mares*, 752 F.2d at 1489 (internal quotation marks omitted) (quoting *United States v. Booth*, 669 F.2d 1231, 1237 (9th Cir. 1981)).

[38] *United States v. Mata-Abundiz*, 717 F.2d 1277, 1280 (9th Cir. 1983).

[39] *Mata-Abundiz*, 717 F.2d at 1280.

[40] *See Arizona v. Johnson*, ___ U.S. ___, 129 S. Ct. 781, 788, 172 L. Ed. 2d 694 (2009) (Even in the context of a simple traffic stop, "[a]n officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." (citing *Muehler v. Mena*, 544 U.S. 93, 100-01, 125 S. Ct. 1465, 161 L. Ed. 2d 299 (2005))).

5.60.060(1), barred Ms. Shuffelen from testifying.[41] The court held that "[t]he victim exception announced in *State v. Thornton*, 119 Wn.2d 578, 835 P.2d 216 (1992), does not apply as Ms. Shuffelen does not seek the opportunity to testify against her husband, and she is not a victim in the common sense described in *Thornton*."

¶32 We disagree. In *Thornton*,[42] our Supreme Court held that the spousal incompetency rule did not bar Arlene Thornton from testifying against her husband in a burglary prosecution.[43] In reaching its holding, the court emphasized the plain language of the statute, noting that the spousal incompetency rule does not apply " 'to a criminal action or proceeding for a crime committed by one [spouse] against the other'."[44] Given this plain language, the court reasoned that Ms. Thornton, the "victim of the burglary," could not be precluded from testifying because "the rule of spousal incompetency cannot be used to bar testimony of the spouse against whom *any* crime was committed."[45] Thus, the exception to the spousal incompetency rule rests on whether a particular offense is "a crime committed by one spouse against the other."

¶33 In this case, RCW 10.99.020(5) states that a domestic violence offense includes "any of the following crimes when committed by one family or household member against another: . . . (r) Violation of the provisions of a

---

[41] RCW 5.60.060(1) provides:

A spouse or domestic partner shall not be examined for or against his or her spouse or domestic partner, without the consent of the spouse or domestic partner; nor can either during marriage or during the domestic partnership or afterward, be without the consent of the other, examined as to any communication made by one to the other during the marriage or the domestic partnership. *But this exception shall not apply to . . . a criminal action or proceeding for a crime committed by one against the other.*

(Emphasis added.)

[42] 119 Wn.2d 578.

[43] *Thornton*, 119 Wn.2d at 579, 583.

[44] *Thornton*, 119 Wn.2d at 580 (alteration in original) (quoting RCW 5.60.060(1)).

[45] *Thornton*, 119 Wn.2d at 580, 583 (emphasis added).

restraining order, no-contact order." RCW 26.50.035(1)(c) provides that consent is not a defense to the charge of violation of a no-contact order: "The order for protection form shall include, in a conspicuous location, notice of criminal penalties resulting from violation of the order, and the following statement: 'You can be arrested even if the person or persons who obtained the order invite or allow you to violate the order's prohibitions.' "

¶34 Taken together, these provisions establish that the violation of a no-contact order is a crime committed by one spouse against the other, even if the protected spouse consents to contact. Thus, the trial court erred in holding that the exception to the spousal incompetency rule did not apply because Ms. Shuffelen consented to contact with Mr. Shuffelen. The court also erred in deciding that Ms. Shuffelen was barred under the spousal incompetency rule because she did not want to testify against her husband. This reasoning fails to acknowledge the *Thornton* court's emphasis on the plain language of RCW 5.60.060(1). Because the violation of a no-contact order is a crime committed by one spouse against the other, the exception to the spousal incompetency rule applies.

## Conclusion

¶35 Mr. Shuffelen does not have standing to challenge Lux's questioning of Ms. Shuffelen under article I, section 7 and the Fifth Amendment. Therefore, the trial court erred in suppressing all testimony by Lux and Duran identifying Mr. Shuffelen as the passenger in Ms. Shuffelen's car and all statements made by Mr. Shuffelen during the stop. The trial court also erred in barring Ms. Shuffelen from testifying since violation of a no-contact rule is a crime committed by one spouse against the other and the victim exception to the spousal incompetency rule applies. We reverse.

DWYER, A.C.J., and COX, J., concur.