# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 86110-7-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| JAYCEE CEDRIC THOMPSON, | |
| Appellant. | |

FELDMAN, J. — Jaycee Thompson appeals his jury conviction for attempted theft of a motor vehicle. He argues the trial court erred in three respects: (1) it commented on the evidence by instructing the jury that "intent to deprive" does not require an intent to "permanently deprive"; (2) it failed to give a voluntary intoxication instruction despite substantial evidence supporting the defense; and (3) it admitted his custodial statements to police in violation of *Miranda*.[1] Finding no error, we affirm.

I

On March 16, 2021, Idris Mohamed stopped at a convenience store for water and snacks. Mohamed parked his car near the store entrance. As he entered the store, he encountered Thompson. Mohamed claims Thompson told him, "Nice car. I should steal

---

[1] *See Miranda v. Arizona*, 384 U.S. 436, 471, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

it." Thompson, on the other hand, claims he complimented the car and asked Mohamed if he could "take it for a spin," to which Mohamed responded, "go ahead."

Moments later, while Mohamed was in the store, he saw Thompson driving away in his car and ran after it. Mohamed quickly caught up with the car. When he did, Thompson exited the car and a conflict ensued during which Mohamed threatened Thompson with a pistol and fired two warning shots, one of which struck Thompson's foot.

Police were notified and two officers arrived within minutes, tackled Thompson, and handcuffed him. Thompson asked one of the officers whether he had been shot. As discussed in section II.C below, the officer then asked Thompson a series of questions regarding why and how he may have been shot and Thompson repeatedly responded, "I don't know." The officers then arrested Thompson and read him his *Miranda* rights, which Thompson acknowledged he understood.

Before trial, Thompson filed a motion to exclude his pre-*Miranda* statements to police. After holding a CrR 3.5 hearing, the trial court denied Thompson's motion. The pre-*Miranda* statements were then admitted at trial. Following trial, the jury convicted Thompson of attempted theft of a motor vehicle. This timely appeal followed.

**II**

**A**

Thompson argues the trial court commented on the evidence by instructing the jury that "intent to deprive" does not require an intent to "permanently deprive." The State argues Thompson waived this argument. We agree with the State.

The failure to timely object usually waives a claim of instructional error on appeal. RAP 2.5(a); *State v. Williams*, 159 Wn. App. 298, 312, 244 P.3d 1018 (2011).

Notwithstanding that rule, a defendant may raise a claim of error for the first time on appeal if it is a manifest error affecting a constitutional right. RAP 2.5(a)(3); *State v. Gordon*, 172 Wn.2d 671, 676, 260 P.3d 884 (2011). "In order to benefit from this exception, 'the appellant must identify a constitutional error and show how the alleged error actually affected the [appellant]'s rights at trial.'" *Gordon*, 172 Wn.2d at 676 (quoting *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009)). To determine if this exception is applicable, "It is proper to 'preview' the merits of the constitutional argument to determine whether it is likely to succeed." *State v. Kirwin*, 165 Wn.2d 818, 823, 203 P.3d 1044 (2009) (quoting *State v. Walsh*, 143 Wn.2d 1, 8, 17 P.3d 591 (2001)).

Thompson attempts to portray his claim as a manifest constitutional error by arguing the trial court's instruction 11 constituted an improper comment on the evidence. Instruction 11 states:

> As used in these instructions, "intent to deprive" means the intent to convert the property of another to one's own use. "Intent to deprive" does not require proof . . . o[f] an intent to permanently deprive the other of the property.

We review alleged errors of law in jury instructions de novo. *State v. Fleming*, 155 Wn. App. 489, 503, 228 P.3d 804 (2010).

Article IV, section 16 of the Washington Constitution provides that "[j]udges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." A judge is thus prohibited "from 'conveying to the jury his or her personal attitudes toward the merits of the case' or instructing a jury that 'matters of fact have been established as a matter of law.'" *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006) (quoting *State v. Becker*, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997)). "A jury instruction that does no more than accurately state the law pertaining to an issue does

not constitute an impermissible comment on the evidence by the trial judge." *State v. Sinrud*, 200 Wn. App. 643, 649, 403 P.3d 96 (2017) (citing *State v. Woods*, 143 Wn.2d 561, 591, 23 P.3d 1046 (2001)). An instruction improperly comments on the evidence when it resolves an issue of fact that should have been determined by the jury. *Becker*, 132 Wn.2d at 64-65.

Here, instruction 11 is not a comment on the evidence because it does no more than accurately state the law pertaining to the charge of attempted theft. Instruction 11 is not misleading; it simply instructs the jury that "intent to deprive" does not require an intent to "permanently deprive." In so stating, instruction 11 reflects established precedent that Washington's theft statute does not require an intent to permanently deprive someone of their property.[2] The instruction did not direct the jury as to whether Thompson's intent had been established as a matter of law, nor did it convey the judge's personal opinion regarding the credibility, weight, or sufficiency of the evidence presented at trial. Rather, instruction 11 merely clarified the level of intent required to find Thompson guilty of attempted theft.

Thompson argues instruction 11 is analogous to the instruction that we concluded was unconstitutional in *Sinrud*. The instruction at issue there "stated that 'the law requires' substantial corroborating evidence" and, "[i]n the very next sentence, it stated that 'the law requires' at least one additional factor." 200 Wn. App at 651. Accordingly, we held the instruction "conflated these two requirements such that a reasonable juror would have interpreted the second sentence to be defining the first." *Id*. Thus, the instruction created

[2] *State v. Komok*, 113 Wn.2d 810, 816, 783 P.2d 1061 (1989) (holding that the Washington theft statute rejects the common law element of "intent to permanently deprive"); *State v. Crittenden*, 146 Wn. App. 361, 370, 189 P.3d 849 (2008) (trial court correctly refused to instruct jury that intent to deprive requires intent to permanently deprive).

the risk that the jury would believe that if they found "at least one additional factor" then they also found "substantial corroborating evidence." *Id*. As such, the instruction was a comment on the evidence because it relieved the prosecution of its burden of proof. *Id*. at 650-51. Here, in contrast, instruction 11 did not allow the jury to erroneously find one factor based on the presence of another factor, nor did it relieve the prosecution of its burden of proof. Thompson's reliance on *Sinrud* is therefore misplaced.

In conclusion, Thompson has not met his burden of showing a manifest error affecting his constitutional rights, and we therefore do not review this claim of error.

**B**

Thompson next argues the trial court erred by denying his request for a jury instruction on voluntary intoxication. We disagree.

"A criminal defendant is entitled to a voluntary intoxication instruction if: (1) one of the elements of the crime charged is a particular mental state; (2) there is substantial evidence of ingesting an intoxicant; and (3) the defendant presents evidence that this activity affected his ability to acquire the required mental state." *State v. Harris*, 122 Wn. App. 547, 552, 90 P.3d 1133 (2004) (citing *State v. Everybodytalksabout*, 145 Wn.2d 456, 479, 39 P.3d 294 (2002)). The trial court here found insufficient evidence regarding the third prong of this test. The court explained:

> [E]ven assuming there's substantial evidence of drug consumption, there's, in the Court's mind, insufficient evidence that the drug consumption affected his ability to acquire the required mental state to warrant a voluntary intoxication instruction.
>
> So that is the reason and my finding why the voluntary instruction is not going to be given in this case.

Where a trial court determines there is insufficient evidence to justify giving a jury instruction requested by the defense, we review that ruling for abuse of discretion. *State v. Butler*, 200 Wn.2d 695, 713, 521 P.3d 931 (2022). Relevant here, an abuse of discretion "may occur when a trial court decision 'is unsupported by the record.'" *Id*. at 714 (quoting *State v. Salgado-Mendoza*, 189 Wn.2d 420, 427, 403 P.3d 45 (2017)).

Thompson argues there is sufficient evidence to warrant a voluntary intoxication instruction because, "The jury heard evidence of Mr. Thompson's intoxication." Thompson testified he smoked PCP and felt its effect when he was at the store. Mohamed similarly testified he "thought maybe [Thompson] was high" based on his interactions with Thompson and because Thompson appeared confused when he was confronted by Mohamed. Thompson also argues he had PCP on him when he was searched by police, and he testified he was confused when the police arrested him. Lastly, Thompson points to the convenience store's video footage where he is seen "slowly trying to purchase a coffee, dropping change, having difficulty picking up the change, and then being locked out of the store due to his strange behavior." Thompson argues this is sufficient evidence of physical manifestations of intoxication from which to infer his mental state was affected, thus entitling him to an intoxication instruction.

As the trial court correctly noted, while such evidence shows that Thompson was intoxicated, it does not establish that his mental state was so affected as to warrant a voluntary intoxication instruction. In so holding, the trial court relied on *State v. Gabryschak*, 83 Wn. App. 249, 252, 921 P.2d 549 (1996), in which the defendant, convicted of felony harassment and third-degree malicious mischief, appealed the denial of a voluntary intoxication instruction. Although there was ample evidence Gabryschak

6

was intoxicated at the time of his crimes, the trial court did not find "evidence on the record from which a rational trier of fact could reasonably and logically infer that Gabryschak was too intoxicated to be able to form the required level of culpability to commit the crimes with which he was charged." *Id*. at 254. The court noted that Gabryschak refused to let officers into the home and then attempted to run from the police while being escorted to their vehicle, which indicated that Gabryschak understood his situation. *Id.* at 251, 254-55. We affirmed the refusal to give a voluntary intoxication instruction because the evidence did not reasonably connect Gabryschak's intoxication with the asserted inability to form the required level of culpability to commit the crimes charged. *Id.* at 252-53, 255.

This case is like *Gabryschak*. Similar to the police officers' testimony in *Gabryschak*, one of the officers who apprehended Thompson testified Thompson was "calm," concerned about his injury, and able to ride his bike. The officer also testified Thompson knew his own name and answered questions appropriately. Thompson himself stated that the events of the night were clear in his mind. Thompson never testified he was too intoxicated by PCP to understand what he was doing; rather, he repeatedly testified he drove Mohamed's vehicle because he thought Mohamed "told me I could take it for a spin." Thompson testified that, even after Mohamed confronted him, he was trying "to argue with [Mohamed] over the fact that he [] [told] me I could take it for a spin." As in *Gabryschak*, this evidence shows that Thompson's drug use did not affect his ability to acquire the required mental state.

On this record, the trial court did not abuse its discretion in refusing to give a voluntary intoxication jury instruction.

7

**C**

Lastly, Thompson argues the trial court erroneously admitted his custodial statements to police in violation of *Miranda*.  We disagree.

As noted previously, police quickly arrived on the scene, tackled Thompson, and handcuffed him.  Thompson then told the officers he may have been shot, prompting an officer to ask, "why would you have got shot, tell me that?"  Thompson answered, "I don't know."  The officer continued, "Tell me why you think you got shot?"  Again, Thompson answered, "I don't know."  The officer repeated, "Again, why do you think you got shot?" and "who shot you?"  Thompson responded, "I don't know who shot me."

Before trial, Thompson filed a motion to exclude the statements he made to the officers—repeated protestations of "I don't know"—arguing they were elicited from him before he was read his *Miranda* rights.  After holding a CrR 3.5 hearing, the trial court denied Thompson's motion.  In its written findings and conclusions, the court explained:

> The Court finds that he was in custody the entire time as he was put in handcuffs immediately.  All pre-Miranda statements are admissible as they were not made under questions meant to elicit incriminating statements.  They were for information, such as questions about Mr. Thompson's injury.

We review a trial court's conclusions of law at a suppression hearing de novo, we review challenged findings for substantial evidence, and we also review de novo whether an interrogation was custodial.  *State v. Shuffelen*, 150 Wn. App. 244, 252, 208 P.3d 1167 (2009).

The trial court's analysis is consistent with applicable precedent.  Although statements made in a custodial interrogation without a *Miranda* warning are generally inadmissible, *see State v. Lavaris*, 99 Wn.2d 851, 856-57, 664 P.2d 1234 (1983),

8

Washington courts have recognized, "Not every question posed in a custodial setting is equivalent to interrogation requiring *Miranda* warnings." *Shuffelen*, 150 Wn. App. at 256-57. The test is "'whether under all of the circumstances involved in a given case, the questions are reasonably likely to elicit an incriminating response from the suspect.'" *Id.* (quoting *United States v. Gonzalez-Mares*, 752 F.2d 1485, 1489 (9th Cir.1985)). "While this test is objective, the subjective intent of the agent is relevant but not conclusive." *Id.*

Generally, questions that are not reasonably likely to elicit an incriminating response from the suspect, and thus may be asked in a custodial setting prior to a *Miranda* warning, are questions regarding "routine information necessary for basic identification purposes,"[3] questions "necessary to contain the situation,"[4] and questions necessary for "the physical protection of the police."[5] In *Richmond*, an officer asked Richmond who had called the police and where this person could be found. 65 Wn. App. at 543. We held Richmond's pre-*Miranda* responses to these questions were admissible, noting, "it was reasonable and prudent for [the officer] to be concerned that someone inside the apartment might be seriously injured." *Id*. at 545. Similarly, in *State v. Lane* 77 Wn.2d 860, 861, 467 P.2d 304 (1970), our Supreme Court held *Miranda* warnings were not required before asking a suspect "Do you have the gun?" The court reasoned "[i]t would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." *Id.* at 863.

---

[3] *United States v. McLaughlin*, 777 F.2d 388, 391 (8th Cir.1985); accord *State v. Walton*, 64 Wn.App. 410, 414, 824 P.2d 533 (1992), abrogated on other grounds by *In re Cross*, 180 Wn.2d 664, 327 P.3d 660 (2014).
[4] *Richmond*, 65 Wn. App. 541, 543,828 P.2d 1180 (1992).
[5] *State v. Lane* 77 Wn.2d 860, 862, 467 P.2d 304 (1970).

Here, it is undisputed Thompson was in custody and had not been read his *Miranda* rights when he was initially questioned. As such, the dispositive issue is whether the police officers' questions were reasonably likely to elicit an incriminating response. As noted previously, and as Thompson explains in his appellate briefing, the specific questions at issue here asked why Thompson had been shot and who shot him. These questions were intended to secure the scene, ensure the officers' safety, ascertain whether Thompson was injured, and determine who shot him. As *Richmond* and *Lane* confirm, the officers here could properly ask Thompson such questions before he was read his *Miranda* rights.

Thompson argues, "the officer did not merely ask questions to ascertain whether Mr. Thompson was injured or the extent of the injury. Rather, the officer's questions were about why someone shot Mr. Thompson and who shot him." Thompson relies on *Cross*, in which an officer told a suspect "sometimes we do things we normally wouldn't do and feel bad about it later." *In re Pers. Restraint of* Cross, 180 Wn.2d 664, 684-85, 327 P.3d 660 (2014). Our Supreme Court held that this comment was designed to elicit an incriminating response because any response, including silence, would be incriminating. *Id.* at 684-86. The court further explained all of the defendant's possible responses to the police officers' comments were incriminating because the comment "implie[d] Cross committed the murders." *Id*. at 686.

Thompson's reliance on *Cross* is misplaced. Unlike the defendant in *Cross*, Thompson could have responded to the police officers' questions without incriminating himself. When asked who shot him and why he was shot, Thompson could have indicated Mohamed shot him as a result of an argument. Similarly, the officers' questions did not

imply that Thompson committed any crime. To the contrary, the questions asked whether Thompson was the victim of a crime and were reasonably likely to elicit a response that incriminated someone else (Mohamed). Thus, the court's holding in *Cross* is inapposite.

Lastly, even if Thompson's pre-*Miranda* statements were improperly admitted, the error was harmless. "A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error." *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985). Here, Thompson's pre-*Miranda* statements had no plausible impact on the outcome of the trial because Thompson repeatedly responded "I don't know" when asked about why he was shot and who shot him. Thompson did not confess to any criminal activity, nor were his statements relevant to any element of the attempted theft charge. Additionally, the pre-*Miranda* statements were nearly identical to Thompson's post-*Miranda* statements, which were properly admitted at trial. On this record, we are convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the asserted error. Thus, even if the pre-*Miranda* statements were improperly admitted, the error was harmless.

Affirmed.

Feldman, J.

WE CONCUR:

Díaz, J.

Birk, J.

11