157 P.3d 893 (2007)
STATE of Washington, Respondent,
v.
Ryan Weston ALLEN, Appellant.
No. 34439-4-II.
Court of Appeals of Washington, Division 2.
May 8, 2007.
*895 Jodi R. Backlund, Manek R. Mistry, Backlund & Mistry, Olympia, WA, for Appellant.
Jeremy Richard Randolph, Lori Ellen Smith, Lewis Co. Prosecuting Atty. Office, Chehalis, WA, for Respondent.
HOUGHTON, C.J.
¶ 1 Ryan Weston Allen appeals his conviction of one count of unlawful possession of a controlled substance, a felony, and one count of violation of a no-contact order, a gross misdemeanor. He argues that (1) the trial court erred by failing to suppress illegally obtained evidence, and (2) he invalidly waived his right to a jury trial. Because the trial court erred in denying Allen's motion to suppress, we reverse and remand.

FACTS
¶ 2 On the night of June 9, 2005, Officer Mike Lowrey of the Centralia Police Department stopped a car for failure to have a working license plate light. Peggy Allen drove the car and Allen rode as a passenger. Lowrey asked Peggy[1] for her driver's license and vehicle registration, which she provided.
¶ 3 Lowrey could see Allen but did not recognize him. Lowrey returned to his patrol car and checked Peggy's information. He learned that "she was . . . a [petitioner] in a protection order." Report of Proceedings (Nov. 18, 2005) at 16. Lowrey also learned that the no-contact order applied to Allen. Although Lowrey assumed the order named a male, he later admitted that he did not know the gender, or description of the party restrained.
¶ 4 When he returned to the car, Lowrey asked Allen for identification. At the pretrial suppression hearing, Lowrey indicated, and the State argued, that he asked Allen for identification because he was investigating a potential violation of the no-contact order, the reasonable suspicion being that the passenger was a male and that the respondent to the no-contact order was presumably a male.[2]
¶ 5 Allen replied that he did not have identification, and Lowrey then asked Allen's name. Both Peggy and Allen said that Allen's name was Ben Haney.[3] Lowrey also *896 obtained a birth date and the last four digits of a social security number from Allen.
¶ 6 With this information, Lowrey returned to his patrol car and checked the name Ben Haney and the date of birth in the Oregon and Washington Computer Aided Dispatch (CAD) databases. The computer disclosed no record for that name and date of birth.
¶ 7 While waiting for a return on the information, Lowrey saw the passenger reach under the passenger seat. At this point, Lowrey returned to the vehicle driver's side and asked Peggy to leave the car, which she did. The two walked to the rear of the vehicle.
¶ 8 Lowrey told Peggy that he knew she had given a false name for the passenger and asked why. She said that there was a valid no-contact order against the passenger in the car. Lowrey asked Peggy for the passenger's name, and she stated that Lowrey already knew the name. When Lowrey asked again, she named Allen.
¶ 9 After confirming the validity of the no-contact order, another officer placed Allen under arrest and put him into a patrol car. A search of the car incident to arrest revealed a bag of methamphetamine under the front passenger seat.
¶ 10 The State charged Allen with one count of unlawful possession of a controlled substance, a felony, and one count of violation of a no-contact order, a gross misdemeanor. On November 18, the trial court held a pretrial CrR 3.6 hearing to determine what evidence, if any, should be suppressed. The trial court granted Allen's motion to suppress in part, ruling that (1) Lowrey lacked reasonable suspicion to investigate whether Allen was the restrained party in a no-contact order; (2) consequently, Lowrey's request for identification from Allen constituted an unlawful seizure under article I, section 7 of the Washington State Constitution; (3) Lowrey's later questioning of Peggy and her identification became an independent source of Allen's identification; (4) Allen did not have standing to assert Peggy's constitutional rights or violation thereof; and (5) excepting all evidence obtained directly or derivatively from Allen's unlawful seizure, Lowrey had probable cause to arrest Allen for violation of a no-contact order.
¶ 11 During the trial court's oral ruling on the matter, it noted that it found Lowrey's questioning of Peggy did not exploit the false name Lowrey obtained from Allen. Rather, the trial court reasoned that Lowrey was going to return to Peggy to issue a citation or release her, therefore, the inquiry formed an independent source of the identity evidence.
¶ 12 Allen waived his right to a jury trial. He stipulated to the facts of the case, and the trial court found him guilty as charged. He appeals.

ANALYSIS
¶ 13 Allen contends that the trial court erred in denying his motion to suppress Peggy's identification of him. He asserts that when Lowrey detained Peggy by asking her to accompany him to the rear of the vehicle, Allen was also unlawfully detained, collaterally. Therefore, any information derived from that unlawful seizure, namely Peggy's identification of Allen, must be excluded. Allen also asserts that Peggy furthered his unlawful seizure and, therefore, he argues derivative evidence obtained through it must be excluded under the exclusionary rule as a fruit of the poisonous tree.
¶ 14 The trial court concluded that Lowrey lacked reasonable suspicion to seize Allen and investigate whether he was the restrained party in the no-contact order. But it also found that the identifying information obtained from Peggy formed an independent source of information and, therefore, need not be suppressed.
¶ 15 Allen alternatively argues that Lowrey unlawfully detained Peggy because he did not have reasonable suspicion to seize her beyond the scope of the initial traffic violation and when he began questioning her about the identity of her passenger, he exceeded the scope of his lawful detention.
¶ 16 We review a trial court's conclusions of law at a suppression hearing de novo. State v. Carter, 151 Wash.2d 118, 125, 85 P.3d 887 (2004). We review challenged *897 findings of fact for substantial evidence, that is, enough evidence to persuade a fair-minded rational person of the truth of the finding. State v. Vickers, 148 Wash.2d 91, 116, 59 P.3d 58 (2002). We treat unchallenged findings as verities on appeal. State v. Acrey, 148 Wash.2d 738, 745, 64 P.3d 594 (2003). The findings must, in turn, support the conclusions of law. Vickers, 148 Wash.2d at 116, 59 P.3d 58.

INDEPENDENT SOURCE RULE
¶ 17 Article I, section 7 of the Washington Constitution provides that "[no] person shall be disturbed in his private affairs, or his home invaded, without authority of law." This provision prohibits law enforcement officers from requesting identification from passengers for investigative purposes unless there is an independent basis that justifies the request. State v. Rankin, 151 Wash.2d 689, 699, 92 P.3d 202 (2004). An "articulable suspicion of criminal activity" is an "independent basis." Rankin, 151 Wash.2d at 699, 92 P.3d 202. "[A] mere request for identification from a passenger for investigatory purposes constitutes a seizure unless there is a reasonable basis for the inquiry." Rankin, 151 Wash.2d at 697, 92 P.3d 202. Generally, evidence obtained in violation of article I, section 7 must be suppressed.[4]See Rankin, 151 Wash.2d at 699, 92 P.3d 202.
¶ 18 "When an unconstitutional search or seizure occurs, all subsequently uncovered evidence becomes fruit of the poisonous tree and must be suppressed." State v. Ladson, 138 Wash.2d 343, 359, 979 P.2d 833 (1999). But evidence need not be suppressed under the fruit of the poisonous tree doctrine if obtained from an independent source. See, e.g., State v. Early, 36 Wash. App. 215, 221-22, 674 P.2d 179 (1983).
¶ 19 Under the independent source exception to the exclusionary rule, evidence tainted by unlawful government actions is not subject to exclusion, provided it is ultimately obtained under a valid warrant or other lawful means independent of the unlawful action. State v. Gaines, 154 Wash.2d 711, 718, 116 P.3d 993 (2005). Thus, the relevant inquiry becomes whether the identifying information Lowrey obtained from Peggy was a lawful, independent source of evidence. This requires us to determine whether Lowrey's later questioning of Peggy was a lawful seizure.[5]

UNLAWFUL SEIZURE OF PEGGY
¶ 20 The trial court did not enter a conclusion of law regarding whether Peggy was unlawfully seized when Lowrey asked her to leave her car, asked her to come to the rear of the vehicle, and questioned her about the passenger's identity. Therefore, taking the unchallenged facts as verities on appeal, we must determine whether her detention was lawful and, if not, any evidence obtained therefrom cannot qualify as a "lawful means independent of the unlawful action." Gaines, 154 Wash.2d at 718, 116 P.3d 993 (emphasis added).
¶ 21 A seizure occurs when a reasonable individual would no longer feel free to terminate the contact and simply walk away. State v. Thorn, 129 Wash.2d 347, 352, 917 P.2d 108 (1996). To justify a warrantless seizure, the police must be able to point to specific and articulable facts giving rise to a reasonable suspicion that the person stopped *898 is engaged in criminal activity. State v. Mendez, 137 Wash.2d 208, 223, 970 P.2d 722 (1999). A stop based on a traffic infraction is valid only if the officer had, from the beginning, a reasonable articulable suspicion that the infraction had occurred and the stop was reasonably related in scope to the circumstances that justified the interference in the first place. Ladson, 138 Wash.2d at 359, 979 P.2d 833.
¶ 22 Here, Lowrey had a reasonable articulable basis to stop the vehicle for a traffic infraction, the non-working license plate light. In order for the inquiry of Peggy to be lawful, it either (1) must have been within the scope of the original traffic stop, or (2) Lowrey must have acquired lawful reasonable suspicion to further investigate her.
¶ 23 First, it cannot be said that Lowrey's later questioning of Peggy was within the scope of the original traffic violation. The State argues that it was within that scope because Lowrey would have had to return to her to either issue the traffic citation or tell her she was free to go. But this argument stretches logic. Asking Peggy to exit her car, accompany Lowrey to the rear of the vehicle, and ask twice to know the name of the passenger goes well beyond a routine investigation of a traffic violation. This is essentially the fishing expedition that the exclusionary rule seeks to prohibit. Former RCW 46.64.015 (2004); State v. Reding, 119 Wash.2d 685, 835 P.2d 1019 (1992).
¶ 24 Second, Lowrey did not have a lawful basis for a reasonable suspicion that the passenger was Allen when he asked Peggy to come to the rear of the vehicle. At this point, Lowrey had a reasonable suspicion because the false name Ben Haney did not register on the CAD databases. But this evidence was derived from Allen's unlawful seizure and inquiry and, therefore, it must be excised from the review of Lowrey's reasonable suspicion.[6] Without knowledge that the passenger provided a false name, Lowrey did not possess reasonable articulable facts to believe that the no-contact order referred to the passenger. For these reasons, the identifying information Lowrey obtained from Peggy does not qualify as a lawful independent source of evidence that gave rise to the probable cause needed to arrest Allen.[7]

ALLEN'S ARREST & SEARCH INCIDENT TO ARREST
¶ 25 For Allen's arrest to be valid, the evidence must have supported a finding of probable cause to arrest him for violation of the no-contact order based only on the lawfully obtained evidence. Here, Lowrey lawfully (1) stopped the vehicle for a traffic offense, (2) obtained Peggy's driver's license and vehicle registration, (3) learned that she was the petitioner in a no-contact order, (4) observed that the passenger of the car was male, and (5) observed the passenger reach under the front passenger seat. This evidence does not give rise to probable cause to arrest Allen.
¶ 26 Police may conduct a warrantless search incident to a valid felony arrest, but this exception to the warrant requirement applies only if the arrest is valid; otherwise, the evidence obtained must be suppressed as fruits of the poisonous tree. Ladson, 138 Wash.2d at 359, 979 P.2d 833; see State v. Parker, 139 Wash.2d 486, 496-97, 987 P.2d 73 (1999). Lowrey did not have a lawful basis for probable cause to arrest Allen; therefore, the arrest was illegal and any evidence obtained via a search incident to the arrest must be suppressed.
¶ 27 We reverse Allen's convictions and remand with instructions for the court to suppress the evidence.[8]
I concur: ARMSTRONG, J.
*899 HUNT, J.
I agree with the majority and the trial court that (1) Officer Lowery did not have a lawful basis for detaining Allen, who was a passenger in Peggy's vehicle stopped for a traffic infraction; and (2) Lowery's questioning of Allen about his identity was an unlawful seizure, based on our Supreme Court's controlling decision in State v. Rankin, 151 Wash.2d 689, 699, 92 P.3d 202 (2004). Nonetheless, in my view, Peggy was an independent source of information, i.e., Allen's name, that led to his arrest for violation of the no contact order; and Allen lacked standing to challenge the constitutionality of Peggy's detention, during which Lowery questioned her about Allen's true identity and she disclosed his real name. Therefore, I respectfully dissent from the majority's suppression of the evidence seized during the search of Allen incident to his arrest for violating the no contact order protecting Peggy.

I. INDEPENDENT SOURCE RULE
I agree with the majority's recitation of our Supreme Court's explanation of Washington's independent source rule:
Under the independent source exception, evidence tainted by unlawful governmental action is not subject to suppression under the exclusionary rule, provided that it ultimately is obtained pursuant to a valid warrant or other lawful means independent of the unlawful action.

State v. Gaines, 154 Wash.2d 711, 718, 116 P.3d 993 (2005) (emphasis added). See also State v. Rothenberger, 73 Wash.2d 596, 440 P.2d 184 (1968) (identification evidence obtained during unlawful traffic stop did not defeat subsequent lawful arrest based on independent records check revealing that defendant had outstanding felony warrant).
But a majority of our Supreme Court has neither squarely addressed nor decided the context within which a court is to determine the lawfulness of the means independent of the unlawful action  who may assert that the independent source is unlawful and under what circumstances. The law is replete with examples of actions that are legal as between two people and illegal as between two others; typically, only the person arguably harmed can assert the illegality.
I would hold that a person, such as Allen, can defeat the independent source rule only if the independent source violated a legal right personal to him. In other words, Allen cannot assert that police action violating Peggy's Fourth Amendment rights was also unlawful with respect to him when this police action did not similarly violate any of his personal rights.
We confront an issue of first impression: For purposes of the independent source exception to the exclusionary rule, must the independent information be obtained from a lawful source in a universal sense or must it be obtained only in a manner that is not unlawful with respect to the defendant against whom the independent information or evidence is used? In my view, the law supports the latter result.

II. STANDING
Resolution of this issue focuses on standing. Again, however, Washington courts have not articulated who has standing to challenge the lawfulness of information obtained from an independent source for purposes of this exception to the exclusionary rule.[9]
As our Supreme Court has noted:[10]

*900 [T]he alleged intrusion of which Mr. Jones complains is the search of Ms. Gale's purse. Mr. Jones does not claim ownership of the purse and therefore he lacks standing to challenge the search unless he is entitled to assert automatic standing. A person may rely on the automatic standing doctrine only if the challenged police action produced the evidence sought to be used against him.
State v. Jones, 146 Wash.2d 328, 332, 45 P.3d 1062 (2002).
Here, in contrast, the police action that Allen challenges is the detention and questioning of Peggy. But this challenged action did not produce the illegal drug evidence that resulted in Allen's conviction. Rather, the unlawful detention of Peggy produced only Allen's true name, which led to his arrest for violation of the no contact order. This evidence of Allen's true name was not used against him, however, for the illegal drug possession charge. Moreover, violation of a no contact order is not a possessory offense, a prerequisite for assertion of automatic standing. Thus, Allen had no standing, either "regular" or automatic, to challenge the illegality of Lowery's detention of Peggy following the traffic stop.
That the police seized illegal drugs during their search of Allen incident to his arrest for violating the no contact order does not confer any type of standing on him to challenge Peggy's detention, which, as I note above, led only to discovery of his true name, his identity. As our Supreme Court noted in Jones, "Automatic standing is not a `vehicle to collaterally attack every police search that results in a seizure of contraband or evidence of a crime.'" Jones, 146 Wash.2d at 334, 45 P.3d 1062 (citing State v. Williams, 142 Wash.2d 17, 23, 11 P.3d 714 (2000)).[11]
In the absence of contrary authority, I would apply our Supreme Court's limiting language in Jones to the independent source rule, both in general and here, as follows: (1) violation of a no contact order is not a possessory offense, which is generally a prerequisite to a defendant's ability to assert automatic standing; and (2) even assuming that Lowery obtained Allen's true identity during his illegal detention of the driver, beyond the scope justified by the traffic stop, I agree with the trial court that passenger Allen lacked standing to challenge such violation of the driver's constitutional rights. In short, Lowery used Peggy as an independent source of information about Allen's true identity to establish probable cause to arrest Allen for violation of the court order prohibiting him from being in contact with Peggy.[12] In so doing, Lowery did not violate any legal right held by Allen.
Our Supreme Court has held that questioning a passenger about his identity, without a sufficient independent basis reasonably shifting suspicion to the passenger, exceeds the scope of the traffic stop of the driver. *901 Rankin, 151 Wash.2d at 691, 92 P.3d 202, (a case on which the majority relies). But our Supreme Court has not similarly addressed or ruled on the passenger's right to challenge the legality of questioning the driver about the passenger's identity, not in Rankin or in any other case. Again, there is no case law holding that an action unlawful with respect to one person is necessarily unlawful with respect to another. On the contrary, search and seizure case law focuses on the rights of individuals, their reasonable expectations of privacy against unwarranted governmental intrusion, and the very personal nature of those rights with respect to who can exercise them.
I respectfully disagree with the majority's holding that because the police detention of Peggy was unlawful as to her, the information they obtained from her about Allen's identity made this inquiry an unlawful source with respect to Allen. I would hold that (1) the independent source rule applies here to legitimize Lowery's obtaining Allen's true identity from Peggy; (2) Lowery's arrest of Allen was supported by probable cause to believe that Allen was in violation of a court order that he have no contact with Peggy; (3) the police lawfully seized illegal drugs from Allen during a search incident to his arrest; and (4) the trial court properly denied Allen's motion to suppress these drugs. I would affirm.
NOTES
[1] For clarity, we use Peggy Allen's first name.
[2] During the suppression hearing, Lowrey testified that he assumed the respondent to the no-contact order was male because of the name Ryan, but he admitted on cross-examination that the name Ryan could also be a female name.
[3] Lowrey testified that while questioning Allen, Peggy kept interjecting answers to his questions until Lowrey asked her to be quiet.
[4] Although the dissent correctly notes that our Supreme Court has not yet addressed the legality of a police officer questioning a driver about a passenger after a traffic stop, the Rankin holding provides guidance. In Rankin, "a police officer asked a passenger for identification for the sole purpose of conducting a criminal investigation, notwithstanding the fact that the officer lacked any articulable suspicion of criminal activity." 151 Wash.2d at 699, 92 P.3d 202. The notion that an officer could question a driver in a traffic stop about a passenger for the sole purpose of conducting a criminal investigation with no articulable suspicion of criminal activity runs contrary to the Rankin holding that protects a passenger's private affairs under article I, section 7. Without this protection, police could have a backdoor route into conducting a criminal investigation that Rankin prohibits.
[5] We believe this interpretation of the independent source rule accords with Gaines. Under Gaines, if the police did not have "lawful means" of obtaining Allen's name, the trial court should not have admitted this evidence under the independent source rule, regardless of any standing analysis. 154 Wash.2d at 718, 116 P.3d 993.
[6] We agree with the trial court's conclusion that Lowrey's initial inquiry of Allen was an unlawful seizure. The State did not challenge this finding.
[7] Because we hold the trial court should have suppressed the evidence under the derivative exclusionary rule, we do not address Allen's argument that he has automatic standing to raise Peggy's constitutional rights.
[8] Because we reverse and remand, we do not address Allen's argument on jury trial waiver.
[9] Gaines does not control here because in that case our Supreme Court neither had before it nor addressed similar facts and the related standing issue that arise here. Gaines did not decide who has standing to assert the unlawfulness of an independent source of information. Gaines, 154 Wash.2d at 718, 116 P.3d 993
[10] State v. Jones, 146 Wash.2d 328, 330-31, 45 P.3d 1062 (2002)

Defendant Kurt Jones was stopped for a traffic violation and subsequently arrested on an outstanding warrant. After Jones was arrested, deputies searched his passenger's purse and seized a firearm found in the purse. Prior to trial, Jones moved to suppress the firearm. The trial court denied Jones's motion, and Jones was convicted of unlawful possession of a firearm. Jones appealed, arguing that the police unlawfully searched his passenger's purse. The Court of Appeals affirmed Jones's conviction. We hold that the search of a passenger's purse is not justified incident to a driver's arrest absent evidence that the passenger's purse was in the immediate control of the driver.
[11] Our Supreme Court held that a defendant situated analogously to Allen lacked automatic standing in Williams:

[T]he defendant fails to meet the criteria for application of the automatic standing doctrine. The defendant stipulated that the police officers found the heroin on his person. The defendant has standing to object to an illegal search of his person. But, the defendant does not challenge the search of his person, which was a valid search incident to his arrest under a valid arrest warrant. He is challenging only the officers' entry into a third party's residence to serve the arrest warrant. The defendant's ability to challenge that entry does not depend upon his admission to possession of contraband or to any other illegal activity. We cannot agree that the automatic standing rule as originally conceived by the Supreme Court would have any application where there is no conflict in the exercise of his Fourth and Fifth Amendment rights.
State v. Williams, 142 Wash.2d 17, 23, 11 P.3d 714 (2000).
[12] Similar to Williams, the methamphetamine Allen was charged with possessing was seized incident to his arrest for his "non-possessory" no contact order violation. As in Williams, Allen did not directly challenge the legality of Lowery's arresting him for violation of the no contact order, probable cause for which was equivalent to the arrest warrant in Williams. Instead, Allen attempted to challenge the violation of Peggy's constitutional rights, which led her to divulge information leading to his arrest for violating the no contact order. That the State ultimately charged Allen with illegal drug possession, as a result of the search incident to that arrest, did not confer on him automatic standing to challenge the legality of Lowery's detention of Peggy.