FILED
COURT OF APPEALS
DIVISION II

2013 MAR -5 AM 9: 25

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

STATE OF WASHINGTON,

Respondent,

v.

CAITLIN CHERIE MASON,

Appellant.

No. 42481-9-II

UNPUBLISHED OPINION

VAN DEREN, J. — Caitlin Cherie Mason appeals her conviction for possession of a controlled substance (hydrocodone). She argues that the trial court erred by not suppressing the drugs found during a search of her purse following her arrest. We hold that (1) the police officer was performing a community caretaking function, which allowed him to extend his contact with Mason to investigate her identity, even though she was a vehicle passenger and not the driver in a traffic stop, and (2) the warrantless search of Mason's purse was justified as a search incident to her lawful arrest on an outstanding warrant. Thus, the trial judge did not err by denying Mason's motion to suppress the drugs found during the search. Accordingly, we affirm.

## FACTS

At approximately 11:20 PM, on February 17, 2011, Centralia Police Officer Chad Withrow stopped a vehicle with a defective tail light and expired tabs. When Withrow approached the driver, he noticed the front seat passenger, who was later identified as Mason,

turn her entire body toward the passenger window so that he could not see her face. Withrow asked the passenger if she was okay. Without turning toward Withrow, she replied that she was fine. Withrow walked to the passenger side window, which prompted the passenger to turn her body back toward the driver, again preventing Withrow from seeing her face. Withrow asked the passenger if she would mind identifying herself. She stated that she was "Jessica Mason." Report of Proceedings (RP) (May 19, 2011) at 9. Withrow returned to his patrol car, contacted dispatch, and determined that no department of licensing records existed for Jessica Mason.

Withrow requested that Centralia Police Officer Patricia Finch come to the scene of the traffic stop to see if she recognized Mason.[1] Withrow was still speaking to the driver of the vehicle when Finch arrived. Finch recognized the passenger as Caitlin Mason and knew that Mason had an outstanding arrest warrant. Withrow confirmed the existence of the warrant with dispatch.

Withrow approached Mason and told her to step out of the vehicle but Mason refused. Withrow removed a purse from Mason's lap and placed it on top of the vehicle. Then Withrow removed Mason from the vehicle, handcuffed her, and escorted her to his patrol car. Finch searched Mason's person and then placed her in Withrow's patrol car.

Withrow asked Mason if the purse he removed from her lap belonged to her and, if so, whether she wanted it taken with her to the jail. She answered "yes" to both questions. RP (May 19, 2011) at 11. Withrow retrieved Mason's purse from the top of the vehicle and handed it to Finch. Finch searched Mason's purse on the trunk of Withrow's patrol car. Inside Mason's purse, Finch found a pill bottle with its label torn off containing "two white-colored pills

---

[1] Finch testified that it is standard procedure to back-up officers on traffic stops at night. Finch was a back-up officer on Withrow's traffic stop involving Mason.

imprinted with 'M357.'" Clerk's Papers (CP) at 41. Withrow advised Mason of her *Miranda*[2]

rights, which she waived. Withrow asked Mason about the pills and she told him the pills were

hydrocodone.

The State charged Mason with unlawful possession of a controlled substance

(hydrocodone). Before trial, Mason unsuccessfully moved to suppress the hydrocodone found in

her purse as the fruit of an unlawful search. The State responded that the search was justified as

incident to Mason's lawful arrest. The trial court conducted a CrR 3.6 suppression hearing, in

which Withrow, Finch, and Mason testified.

At the suppression hearing, the parties did not address whether the inquiry into Mason's

identity exceeded reasonable grounds under a community caretaking function or whether the

officer's inquiry was based on an articulable suspicion of criminal conduct. The parties' briefing

and argument focused exclusively on the warrantless search of the purse—whether the search of

Mason's purse was permissible incident to Mason's arrest on the outstanding warrant. But based

on testimony at the hearing, the trial court addressed the unargued and unbriefed preliminary

matter of whether Withrow's inquiry about Mason's identity, which ultimately led to her

identification and arrest, was lawful.

Withrow testified about his interaction with Mason:

> [WITHROW:] While she's in the car, I went around on the other side and asked — see if I could see who it was because she was — obviously didn't want me to see her. And I came back, talked to the driver and asked if [Mason] was okay. She said yes but turned around. When I went to the passenger side of the vehicle she turned the opposite way again so I couldn't see her face.
>
> [THE STATE:] What did you do then?

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed.2d 694 (1966).

[WITHROW:] I asked her if she was okay. She said yes without turning around. I asked her at that time if she would be willing to give me her name.

[THE STATE:] How did she respond?

[WITHROW:] She gave me a name, not Caitlin Mason.

RP (May 11, 2011) at 6. On redirect, he elaborated:

[THE STATE:] When you asked [Mason] would you [sic] mind giving you her name, were you concerned about her safety at that point?

[WITHROW:] Something seemed wrong, I didn't know, that's why I asked if she was okay. And it was overly suspicious. I didn't know, the way she was turned around and so forth, I thought, one, something is wrong, or, two, she's trying to hide her face from me.

[THE STATE:] Did she appear ill or —

[WITHROW:] I couldn't tell.

RP (May 11, 2011) at 14-15.

The trial court denied Mason's motion to suppress the evidence, stating:

[T]his wasn't argued, it was suggested, but I'm going to rule on it anyhow, she was [identified] on the basis of suspicious behavior[,] either the officers acting in community caretaking functions by trying to find out if there was something wrong, which there could have been given her attempt to hide her face, or whether she was trying to lie as it turned out because she knew there was a warrant for her. In any event, the officer had an articulable basis for continuing the contact with her through the identification basis [sic].

RP (May 11, 2011) at 28.

The trial court entered the following factual findings and conclusions of law at the CrR 3.6 hearing:

## I.    FINDINGS OF FACT

. . . .

1.4    Withrow noticed the passenger appeared as if she were . . . trying to hide or block her face from view.

1.5    Withrow asked the passenger if she was okay.

1.6    The passenger replied that she was fine but continued to shield her face from view.

1.7    Withrow then asked the passenger if she would mind identifying herself.

1.8    The passenger identified herself with a name other than her own.

4

1.9    Officer Finch, Centralia P[olice] D[epartment], arrived and was able to recognize the passenger as Caitlin Cherie Mason.

1.10   Finch was aware of a warrant issued for Mason's arrest.

1.11   Withrow ran Mason's name and discovered she was wanted on an outstanding warrant.

. . . .

1.21   Mason was asked whether she wished to have her purse taken with her to the jail.

1.22   Mason replied that she did.

1.23   Finch took custody of Mason's purse and searched it prior to Mason being transported to the jail.

## II.    CONCLUSIONS OF LAW

2.1   Officer Withrow was acting either in a community caretaking or investigative role when he asked the defendant to identify herself.

2.2   Officer Withrow had a clearly articulable basis for asking the defendant to identify herself.

2.3   Officer Withrow had a duty to search the defendant's purse prior to transporting and tend[er]ing it to jail personnel.

2.4   The search of the defendant's purse was lawful.

CP at 22-24.

At trial, Withrow, Finch, and a forensic scientist from the Washington State Patrol Crime Laboratory testified for the State. Consistent with its pretrial ruling, the trial court admitted as evidence the hydrocodone pills found in Mason's purse. The trial court found Mason guilty as charged and sentenced her to a standard range sentence of two days' confinement for which Mason received credit for time served.

Mason timely appeals.

## ANALYSIS

Mason argues that the trial court erred when it denied her motion to exclude evidence obtained in a search of her purse because: (1) the evidence was obtained as a result of her unlawful detention during a traffic stop in which she was a passenger, in violation of article I, section 7 of the Washington State Constitution and the Fourth Amendment of the United States

5

Constitution and (2) the warrantless search of her purse was not justified as a search incident to her arrest on an outstanding arrest warrant. We disagree.

I. STANDARD OF REVIEW

We review the trial court's denial of a CrR 3.6 suppression motion to determine whether substantial evidence supports the challenged findings of fact and whether the findings of fact support the conclusions of law. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Here, Mason does not challenge the trial court's findings of fact; thus, we consider them verities on appeal. *See State v. Lohr*, 164 Wn. App. 414, 418, 263 P.3d 1287 (2011). Whether undisputed facts constitute a violation of article I, section 7 of the Washington State Constitution is a question of law. *State v. Rankin*, 151 Wn.2d 689, 694, 92 P.3d 202 (2004). We review the trial court's conclusions of law de novo. *Garvin*, 166 Wn.2d at 249.

II. MASON WAS SEIZED WHEN THE VEHICLE WAS STOPPED

Mason alleges that she was detained in violation of article I, section 7 of the Washington Constitution, and the Fourth Amendment of the United States Constitution because she was asked to identify herself during a traffic stop of a vehicle in which she was a passenger and the police officer had no independent basis to investigate her. "'When a party claims both state and federal constitutional violations, we turn first to our state constitution.'" *State v. Afana*, 169 Wn.2d 169, 176, 233 P.3d 879 (2010) (quoting *State v. Patton*, 167 Wn.2d 379, 385, 219 P.3d 651 (2009)).

"'It is well settled that article I, section 7 of the Washington [State] Constitution provides greater protection to individual privacy rights than the Fourth Amendment to the United States Constitution.'" *Rankin*, 151 Wn.2d at 694 (quoting *State v. Jones*, 146 Wn.2d 328, 332, 45 P.3d 1062 (2002)). The Washington State Constitution provides that "[n]o person shall be disturbed

in his private affairs, or his home invaded, without authority of law." CONST. art. I, § 7. "[A] warrantless search or seizure is considered per se unconstitutional unless it falls within one of the few exceptions to the warrant requirement." *Rankin*, 151 Wn.2d at 695. First, we determine whether a warrantless search or seizure has taken place and, if it has, whether it was justified by an exception to the warrant requirement. *Rankin*, 151 Wn.2d at 695.

A person is seized when a reasonable person would have believed that she was not free to leave or to decline the officer's requests or otherwise terminate the encounter. *State v. Armenta*, 134 Wn.2d 1, 10-11, 948 P.2d 1280 (1997). "[I]t is now well established that '[f]or the duration of a traffic stop . . . a police officer effectively seizes everyone in the vehicle.'" *State v. Marcum*, 149 Wn. App. 894, 910, 205 P.3d 969 (2009) (second and third alterations in original) (internal quotation marks omitted) (quoting *Arizona v. Johnson*, 555 U.S. 323, 327, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009)); *see also Brendlin v. California*, 551 U.S. 249, 255, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007).[3] "[P]assengers are unconstitutionally detained when an officer requests identification 'unless other circumstances give the police independent cause to question [the] passengers.'" *Rankin*, 151 Wn.2d at 695 (second alteration in original) (quoting *State v. Larson*, 93 Wn.2d 638, 642, 611 P.2d 771 (1980)).

Here, the trial court did not explicitly conclude that Mason was seized when Withrow stopped the car in which she was riding and requested that she identify herself, but we affirm the trial court's implicit conclusion that Mason was seized, which the State does not dispute. *See*

---

[3] Our Supreme Court has previously held that an automobile passenger is not seized when a police officer merely stops the vehicle in which the passenger is riding, but "this holding has been superseded with respect to the Fourth Amendment by *Brendlin*, [551 U.S. at 255,] and will be without practical effect for state constitutional purposes given *Brendlin*'s more protective Fourth Amendment analysis of the question." *Marcum*, 149 Wn. App. at 910 n.8 (citing *State v. Mendez*, 137 Wn.2d 208, 221-22, 970 P.2d 722 (1999)).

*Marcum*, 149 Wn. App. at 910; *see also State v. Brown*, 154 Wn.2d 787, 797-98, 117 P.3d 336 (2005) (holding that a passenger was clearly seized when he was asked to identify himself for investigative purposes so the officer could conduct a warrants and records check); *Rankin*, 151 Wn.2d at 697-99.

## II.     THE OFFICER'S REQUEST FOR IDENTIFICATION WAS LAWFUL

Mason focuses on Withrow's request for Mason to identify herself as the conduct giving rise to her claim on appeal that her seizure was unlawful. The unlawful seizure issue was not raised by Mason or briefed by either Mason or the State in the trial court. But the trial court ruled sua sponte that Withrow was acting either in a community caretaking *or* investigative role when he asked Mason to identify herself and that Withrow had a clearly articulable basis for asking Mason for her name. As a result, the factual record related to whether Withrow could legally ask Mason to identify herself is sparse.

The trial court's unchallenged findings of fact state that Withrow noticed Mason trying to hide or block her face from view; Withrow asked Mason if she was okay; and Mason replied that she was fine, but she continued to shield her face from his view. Withrow then asked Mason if she would mind telling him her name.[4] On these facts, the trial court concluded that Withrow was "acting either in a community caretaking or investigative role when he asked [Mason] to identify herself" and, thus, he had a "clearly articulable basis for asking [Mason] to identify herself." CP at 24.

---

[4] Mason identified herself with a name other than her own. But we cannot consider this in determining whether, initially, Withrow had a lawful independent basis for investigating Mason's identity. *See Brown*, 154 Wn.2d at 798 (reasoning that Brown having provided to police a name that did not produce any records cannot be considered in the "articulable suspicion" equation because the officer was required to have articulable suspicion of criminal activity before he seized Brown by asking Brown to identify himself).

If the officer is performing a community caretaking function, an inquiry about a person's identity may be justified. *See State v. Thompson*, 151 Wn.2d 793, 802, 92 P.3d 228 (2004) (recognizing that "[t]he community caretaking function, which is divorced from the criminal investigation . . . allows for . . . limited invasion of constitutionally protected privacy rights when it is necessary for police officers to render aid or assistance or when making routine checks on health and safety"). The reasonableness of a "'community caretaking'" stop is evaluated by balancing the competing interests involved in light of all the surrounding facts and circumstances. *State v. Acrey*, 148 Wn.2d 738, 748-49, 64 P.3d 594 (2003).

To determine whether a police officer's "encounter with a person is reasonable as part of a routine check on safety, we must balance the 'individual's interest in freedom from police interference against the public's interest in having the police perform a community caretaking function.'" *Acrey*, 148 Wn.2d at 750 (internal quotation marks omitted) (quoting *State v. Kinzy*, 141 Wn.2d 373, 387, 5 P.3d 668 (2000)). If a person is seized, the routine safety check must be "necessary and strictly relevant to performance of the noncriminal investigation" and "'must end when [the] reasons for initiating [the] encounter are fully dispelled.'" *Acrey*, 148 Wn.2d at 750 (quoting *Kinzy*, 141 Wn.2d at 338).

In *Acrey*, the police initially detained Acrey, who was a juvenile, while investigating a report of juveniles fighting on a city street. 148 Wn.2d at 742-43, 752. After the police determined that Acrey was not involved in criminal activity, they asked him for his name and home telephone number and directed him to sit and wait while a police officer telephoned his mother. *Acrey*, 148 Wn.2d at 743. Acrey's mother requested that a police officer bring Acrey home. *Acrey*, 148 Wn.2d at 743. Before placing Acrey in the police car, a police officer searched him and found drugs. *Acrey*, 148 Wn.2d at 743. In his subsequent prosecution for

9

possession of drugs, Acrey moved to suppress the drugs as fruit of an illegal search and seizure. *Acrey*, 148 Wn.2d at 744. On appeal, our Supreme Court held that the police officer's brief detention of a 12-year-old boy around midnight in an isolated commercial area for purposes of identifying him and telephoning his mother was reasonable and lawful based on the officer's community caretaking function. *Acrey*, 148 Wn.2d at 755.

Here, Mason's repeated attempts to turn her body and hide her face from Withrow's view caught his attention and caused him to be concerned for her safety. Withrow asked Mason if she was okay. She responded that she was fine, but she continued to hide her face, thus not fully dispelling the reasons for Withrow's initial inquiry. *See Acrey*, 148 Wn.2d at 750. Withrow then asked whether Mason would mind identifying herself.

Mason's interest in freedom from police interference is substantial. *See Acrey*, 148 Wn.2d at 750-51. But Withrow's encounter with Mason was minimally intrusive (asking her if she was okay and asking if she would give him her name), Mason was already lawfully seized as a passenger in a legitimate traffic stop, and the extension of the traffic stop, if at all, was brief. When weighed against Withrow's concern for Mason's safety and welfare, we hold that the intrusion on Mason's freedom from police interference was justified; and we hold that under the circumstances, Withrow's actions in asking Mason if she was all right and asking her if she would tell him her name were reasonable as part of his lawful community caretaking function and not an unlawful seizure. *See Acrey*, 148 Wn.2d at 751.

Mason also argues that Withrow's testimony does not support a conclusion that he had an articulable suspicion that she was engaged in criminal activity, that her situation was analogous to that in *State v. Allen*, 138 Wn. App. 463, 471, 157 P.3d 893 (2007), and that the drugs found in her purse should have been suppressed. Mason is correct that in the absence of a community

10

caretaking function, an independent basis must support inquiry about a passenger's identification for investigatory purposes, i.e., an officer must have a reasonable suspicion that the passenger is involved in criminal conduct. *Rankin*, 151 Wn.2d at 699. "'[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *State v. Doughty*, 170 Wn.2d 57, 62, 239 P.3d 573 (2010) (alteration in original) (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)).

In *Allen*, we held that the driver was unlawfully seized because the officer did not have reasonable articulable suspicion supporting further investigation of the driver in an attempt to determine the passenger's name and that when the driver told the officer Allen's name the information was not free of the taint of the "fishing expedition that the exclusionary rule seeks to prohibit." *Allen*, 138 Wn. App. at 471. We also held that the officer "did not have a *lawful* basis for a reasonable suspicion that the passenger was Allen when he asked [the driver] to come to the rear of the vehicle." *Allen*, 138 Wn. App. at 471. Because the officer had no "knowledge that the passenger [had] provided a false name, [he] did not possess reasonable articulable facts to believe that the no-contact order referred to the passenger." *Allen*, 138 Wn. App. at 471. Allen's arrest was not supported by probable cause and, thus, we reversed Allen's convictions and remanded to the trial court with instructions to suppress the evidence obtained during the search incident to his arrest. *Allen*, 138 Wn. App. at 472.

Mason also argues that she should have been free to exit the vehicle and walk away and, thus, she should also have been free to avoid contact with the police officer by hiding her face, relying on *State v. Mendez*, 137 Wn.2d 208, 224-26, 970 P.2d 722 (1999), *abrogated on other grounds by Brendlin*, 551 U.S. at 255. Mason's reliance on *Mendez* is misplaced because

11

*Mendez* dealt with whether officers could order a passenger to exit or remain in a vehicle without an articulable suspicion of criminal activity and Mason was neither detained nor required to remain in the vehicle before she was identified. *Mendez*, 137 Wn.2d at 212.

Mendez was a passenger in a vehicle stopped by the police. *Mendez*, 137 Wn.2d at 212. He exited the vehicle and walked away, but police officers pursued him and ordered him back into the vehicle. *Mendez*, 137 Wn.2d at 212-13. The police officer in *Mendez* testified that he had no suspicion that Mendez had engaged in or was about to engage in criminal conduct, and the officer did not testify that Mendez's actions aroused suspicion. *Mendez*, 137 Wn.2d at 224. Our Supreme Court held that officers unlawfully seized Mendez when they pursued him and ordered him back into the vehicle because officers must "be able to articulate an objective rationale predicated specifically on safety concerns . . . for ordering a passenger to stay in the vehicle or to exit the vehicle," and none existed. *Mendez*, 137 Wn.2d at 220, 226.

Mason's actions, repeatedly turning her body away from Withrow and hiding her face so as not to be identified, caused him concern for her welfare that was not dispelled when she assured him that she was all right because her concealed face prevented him from ascertaining whether she was ill or in distress. At the same time, her behavior aroused his suspicion that she did not want him to identify her.

We agree with Mason that Withrow's suspicion alone did not support a request for identification based on an articulable suspicion of wrongdoing; Withrow did not testify that he suspected her of wrongdoing. *See Allen*, 138 Wn. App. at 471. But the record and the findings do support the trial court's alternative holding that Withrow was performing a community caretaking function that warranted his request for her identification. The trial court's unchallenged findings of fact support the trial court's conclusion that Withrow's actions were

12

based on a community caretaking function and that his inquiry about her identity was based on a continuation of that function as well as some suspicion that she had a reason to hide her face from him.

Further, our review of the record from the suppression hearing does not show that Withrow unreasonably prolonged the traffic stop to wait for Finch's back-up, which ultimately resulted in Mason's identification and arrest on an outstanding warrant. Accordingly, we hold that Mason was lawfully asked to identify herself, that Mason was identified by Finch, and that Mason was arrested on the outstanding warrant and searched incident to that arrest.

III. WARRANTLESS SEARCH OF PURSE INCIDENT TO LAWFUL ARREST

Next, Mason argues that the trial court erred by denying her motion to suppress evidence found in a warrantless search. Mason does not challenge her arrest under the arrest warrant. She challenges only the search of her purse after her arrest. The State argues that the search of Mason's purse was a search incident to her lawful arrest and, thus, an exception to the warrant requirement. We agree with the State.[5]

Generally, warrantless searches are per se unreasonable under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution. *Garvin*, 166 Wn.2d at 249. "The State bears the burden to prove that one of the narrowly drawn exceptions to the warrant requirement validates the warrantless search." *State v. Kirwin*, 165 Wn.2d 818, 824, 203 P.3d 1044 (2009). Searches incident to lawful arrest are one of the "'jealously and carefully drawn exceptions to the warrant requirement.'" *Garvin*, 166 Wn.2d at 249 (internal quotation marks omitted) (quoting *State v. Duncan*, 146 Wn.2d 166, 171, 43 P.3d

---

[5] Because we hold that the search of Mason's purse was justified as a search incident to lawful arrest, we do not reach the State's alternative argument that the search fits within the purview of an inventory search, an additional exception to the warrant requirement.

13

513 (2002)). The exception "'derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations.'" *State v. MacDicken*, 171 Wn. App. 169, 174, 286 P.3d 413 (2012) (quoting *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009)), *petition for review filed*, No. 88267-3 (Wash. Jan. 4, 2013). "[T]he permissible scope of a search incident to arrest includes the arrestee's person and the area within his or her immediate control, meaning 'the area from within which he might gain possession of a weapon or destructible evidence.'" *MacDicken*, 171 Wn. App. at 174 (quoting *Chimel v. California*, 395 U.S. 752, 763, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969)); *see also State v. Byrd*, 162 Wn. App. 612, 616-17, 258 P.3d 686, *review granted*, 173 Wn.2d 1001 (2011).

According to the trial court's unchallenged findings of fact, when Mason was arrested she chose to have her purse taken with her to the jail rather than left with the driver of the vehicle in which she was riding.[6] Finch retrieved Mason's purse and searched it before transporting Mason and the purse to the jail. The record does not reflect whether Mason had access to her purse during transport. But police officers cannot be expected to transport personal belongings of an arrestee without knowing whether they contain weapons or destructible evidence. The trial court's unchallenged finding of fact that Mason's purse was to be transported by police at her behest persuades us that the trial court did not err in finding that the search of Mason's purse was within the scope of a search incident to her lawful arrest.

---

[6] The record reflects that Mason decided to have the vehicle driver take her child (who was also a passenger) and her diaper bag to Mason's mother's or boyfriend's house. But Mason wanted her purse to be taken with her to the jail.

No. 42481-9-II

Accordingly, we affirm the trial court's denial of Mason's motion to suppress the hyrdocodone found in her purse.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Van Deren, J._

VAN DEREN, J.

We concur:

_Quinn-Brintnall, J._

QUINN-BRINTNALL, J.

_Worswick, C.J._

WORSWICK, C.J.

15