IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | ) | No. 77230-9-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JEANNETTE TARA DEMMON, | ) | |
| | ) | |
| Appellant. | ) | FILED: November 13, 2018 |

ANDRUS, J. — Jeanette Demmon, a passenger in a car pulled over during a traffic stop, sought to suppress evidence of drugs found in her purse after being questioned by police and admitting the existence of an outstanding arrest warrant. The trial court denied the motion to suppress, concluding that Demmon had not been seized until after she admitted the existence of the warrant. Because Demmon was seized when police asked her to reveal her identity, and this seizure was unlawful, we reverse Demmon's conviction.

## FACTS

Jeanette Demmon was a passenger in Jeffrey Pastian's car when he was stopped for a missing center brake light and making an improper lane change. During the stop, Lynnwood Police Officer Beau Mattheis learned that Pastian's license was suspended and that he was the respondent in two no-contact orders entered for the protection of two different females. Pastian told Officer Mattheis that his passenger was not a protected party under either no-contact order.

As Officer Mattheis conducted a field sobriety test with Pastian, Lynnwood Police Sergeant (Sgt.) Christopher Breault arrived on the scene. Sgt. Breault approached the open driver's side door and spoke to Demmon as she sat in the front passenger seat. He told her he was talking to her because the driver had two protection orders. He told her he needed "her information to determine if she was the protected person in those orders." Demmon initially mumbled something, which Sgt. Breault thought might be her first name. Demmon then stated that she did not want to give her name.

Demmon opened the passenger door, and Sgt. Breault moved around the car to stand next to the open passenger door. As he stood next to Demmon, he again said he needed her information. He told her again what he was investigating and why he needed her name. He told her he needed to determine whether she was the protected person in either of the no-contact orders. Demmon then replied she did not want to give her name because she had an outstanding felony warrant.[1]

At some point, "things started to escalate," with Demmon yelling at Pastian and arguing with Sgt. Breault. When he heard about the possible outstanding warrant, Sgt. Breault told Demmon she was not free to leave, ordered her out of the car, and patted her down for weapons. After Sgt. Breault and Officer Mattheis placed Demmon into handcuffs, she identified herself and Officer Mattheis confirmed the existence of an outstanding felony warrant.

Sgt. Breault asked Demmon if she needed anything out of the car, and she stated she wanted her purse. Demmon told Officer Mattheis she had drugs in her

---

[1] Demmon was not a protected party under either no-contact order.

2

purse. When he searched Demmon's purse, he found methamphetamine and heroin.

Demmon was charged with possession of a controlled substance while on community custody. She moved to suppress the drug evidence, arguing that Sgt. Breault had unlawfully detained her when he stood outside the passenger door and requested her identification. The State advanced two arguments—first, that Sgt. Breault was engaged in community caretaking by asking Demmon for her name; and second, State v. Rankin[2] only prohibits asking a passenger to identify herself when the police are investigating whether the passenger is engaged in criminal conduct, not when investigating whether the driver is doing so.

The trial court denied Demmon's motion to suppress. In its oral ruling, the trial court rejected the State's community caretaking argument:

> Community caretaking is officer friendly. That's how I look at it. There is a difference between an officer walking up to you and saying, "what's your name," and that is different from an officer saying, "hey, you know, this guy that we just stopped has two no contact orders and we have to determine whether or not you are one of the protected parties so we need your name."

> It's completely different, not remotely the same.

The court went on to find that "there was no seizure" because the police officer told her the reason he was asking her name, and "all she had to do was give it, and she would have been free to leave." The trial court found that Demmon was the "one who turned it into a criminal investigation," and there was no seizure because "the initial contact was basically conversational." The trial court's written findings are consistent with its oral ruling.

---

[2] 151 Wn.2d 689, 92 P.3d 202 (2004).

Following a stipulated bench trial, in which Demmon was found guilty of possessing heroin and methamphetamine while under community custody, she was sentenced to confinement for six months and one day and 12 months of community custody. Demmon appeals.

## ANALYSIS

Demmon argues that she was unlawfully seized, in violation of article I, section 7 of the Washington Constitution, when Sgt. Breault repeatedly requested her name without any articulable, individualized suspicion that she was engaged in criminal activity. We agree.

The Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution prohibit an unreasonable search and seizure without a warrant, unless an exception to the warrant requirement applies. State v. Rankin, 151 Wn.2d, 689, 695, 92 P.3d 202 (2004). "It is well settled that article I, section 7 of the Washington Constitution provides greater protection to individual privacy rights than the Fourth Amendment to the United States Constitution." Id. at 694 (quoting State v. Jones, 146 Wn.2d 328, 332, 45 P.3d 1062 (2002)). Therefore, we need not engage in a Gunwall[3] analysis. Id.

The party asserting an unlawful seizure bears the burden of establishing it. State v. Young, 135 Wn.2d 498, 510, 957 P.2d 681 (1998). If the defendant establishes that a seizure occurred, the State bears the burden of showing the seizure falls within one of the carefully drawn exceptions to the warrant requirement. State v. Acrey, 148 Wn.2d 738, 746-48, 64 P.3d 594 (2003).

---

[3] State v. Gunwall, 106 Wn.2d 54, 720 P.2d 808 (1986).

Whether a law enforcement officer has seized a person is a mixed question of law and fact. State v. Harrington, 167 Wn.2d 656, 662, 222 P.3d 92 (2009). The resolution by a trial court of differing accounts of the circumstances surrounding the encounter are factual findings entitled to great deference, but the ultimate question of whether those facts constitute a seizure is one of law and is reviewed de novo. State v. Armenta, 134 Wn.2d 1, 9, 948 P.2d 1280 (1997). Demmon has not assigned error to any of the trial court's findings of fact so our review focuses on a de novo determination of whether the trial court derived proper conclusions of law from those findings. Id.

Demmon does not dispute the initial traffic stop was lawful. Officer Mattheis saw that Pastien's vehicle did not have an operating center brake light, a violation of RCW 46.37.070. Demmon argues the trial court erred in concluding that Demmon was not seized during this traffic stop. We agree.

"[I]t is now well established that '[f]or the duration of a traffic stop . . . a police officer effectively seizes everyone in the vehicle.'" State v. Marcum, 149 Wn. App. 894, 910, 205 P.3d 969 (2009) (internal quotation marks omitted) (quoting Arizona v. Johnson, 555 U.S. 323, 327, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009)); see also Brendlin v. California, 551 U.S. 249, 255, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007). Demmon was lawfully detained, along with the driver, during the admittedly permissible traffic stop.

Although the initial stop was lawful, the police then began to question Demmon. Because Demmon was seized when the police conducted its traffic stop, the State must show that questioning Demmon falls within an exception to

5

the warrant requirement. Acrey, 148 Wn.2d at 746. Under article I, section 7 of the Washington Constitution, "passengers are unconstitutionally detained when an officer requests identification 'unless other circumstances give the police independent cause to question [the] passengers.'" Rankin, 151 Wn.2d at 695 (quoting State v. Larson, 93 Wn.2d 638, 642, 611 P.2d 771 (1980)). One such "independent cause" is an articulable suspicion that the passenger is engaging in criminal activity. Id. at 697-98.

The State raises two arguments on appeal to justify the police's questioning Demmon. First, the State argues that the possibility that Demmon was a protected person in a no-contact order constitutes "independent cause" under Rankin to question her. Second, the State contends this court should affirm the police questioning as a part of its permissible community caretaking function.

The State relies on State v. Pettit for its first argument. 160 Wn. App. 716, 251 P.3d 896 (2011). In Pettit, the defendant, a driver of a vehicle, sought to suppress evidence of his passenger's identity, claiming that the investigating officer exceeded the permissible scope of a traffic stop. Id. at 718. During the stop, a Kitsap County sheriff's deputy learned that the driver was named in a no-contact order issued for the protection of a 16-year-old girl. Id. The deputy asked the passenger, who appeared to be about 16, for her name. Id. at 718-19. The girl provided a name, which the deputy could not find in the police database. Id. at 719. He then learned that the 16-year-old girl listed in the no-contact order had the same physical characteristics as the girl in the car. Id. The teen was also identified as missing, and there was a warrant for her arrest. Id.

The court held that the facts of Pettit were sufficient to support a rational inference warranting the officer's initial request for the passenger's identification to determine whether she was the person whom the no-contact order sought to protect. Id. at 720. After receiving false information from the passenger, the police conducted an additional, brief investigation that did not significantly extend the duration of the traffic stop. Id. at 721. It also held, however, that Pettit lacked standing to challenge the deputy's questioning of the passenger. Id. Finally, it held the fact that the passenger was possibly a missing minor runaway was an exigent circumstance justifying the deputy's brief detention of Pettit to determine the identity of the minor female in his car. Id.

Pettit does not hold that the police may question an unwilling passenger to determine if she is the protected person in a no-contact order without violating the passenger's constitutional right to privacy. The court acknowledged as much by distinguishing Pettit from State v. Allen, 138 Wn. App. 463, 157 P.3d 893 (2007). In Allen, a male passenger was asked to identify himself during a traffic stop. Id. at 465-66. A records check indicated that the female driver was the protected party in a no-contact order, but initially, the driver provided a false name for her passenger and denied he was the respondent named in that order. See id. at 466. The court of appeals held that the police had no basis to ask the passenger to identify himself because they had no reason to suspect the passenger was violating the no-contact order. Id. at 471.

7

We decline to extend Pettit to the facts of this case to justify the police questioning of Demmon when there was no reasonable suspicion that Demmon was engaged in any criminal activity or a minor.

The State's second argument is similarly unsupported by the record. The community caretaking function is an exception to the warrant requirement, "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." State v. Kinzy, 141 Wn.2d 373, 385, 5 P.3d 668 (2000) (emphasis added) (quoting Cady v. Dombrowski, 413 U.S. 433, 441, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973)). In Washington, courts have applied this exception to the rendering of emergency aid and routine checks on health and safety. Id. at 386. "[A]n officer may approach, detain, and question a person under circumstances that may require the officer to provide aid or assistance." State v. Acrey, 110 Wn. App. 769, 774, 45 P.3d 553 (2002), aff'd, Acrey, 148 Wn.2d 738.

Such an invasion of privacy is allowed only if "(1) the police officer subjectively believed that someone likely needed assistance for health or safety concerns, (2) a reasonable person in the same situation would similarly believe that there was need for assistance, and (3) there was a reasonable basis to associate the need for assistance with the place being searched." State v. Thompson, 151 Wn.2d 793, 802, 92 P.3d 228 (2004).

The trial court rejected this argument, and we do so as well. The State questioned Demmon for one purpose and one purpose only—to investigate a potential criminal violation by the driver. Sgt. Breault testified he contacted Demmon to investigate whether Pastian was committing a crime, and the trial

8

court's unchallenged findings are consistent with this testimony—"Sergeant Breault asked the woman her name and told her that he needed her name because the driver was the restrained party in two protection orders and he needed to determine whether she was one of the protected parties." He did not testify that Demmon needed police aid for her personal safety or that she needed any medical assistance. Although he testified that Demmon appeared "dope sick," he conceded the reason he contacted her had nothing to do with her appearance or medical condition. He told Demmon he needed to know her name because "we were doing [an] investigation." Officer Mattheis similarly testified that they had a "duty" to identify Demmon because they needed to determine if Pastian was violating one of the no-contact orders.

It is undisputed in this record that the sole purpose of asking Demmon to identify herself was to investigate a possible crime. The police officers did not subjectively believe they were acting as community caretakers. See Acrey, 148 Wn.2d at 754-55 (community caretaking function exception "may not be used as a pretext for a criminal investigation"). Therefore, the community caretaking exception does not apply.

Even if Sgt. Breault initially talked to Demmon as part of a permissible health and safety check, once Demmon declined to identify herself, Sgt. Breault's further request for identification violated Demmon's privacy interests under article I, section 7. "[W]hether an encounter made for noncriminal noninvestigatory purposes is reasonable depends on a balancing of the individual's interest in freedom from police interference against the public's interest in having the police

perform a community caretaking function." Kinzy, 141 Wn.2d at 387 (emphasis added) (internal quotation marks omitted). When, as in this case, a person is seized, courts "must cautiously apply the community caretaking function exception because of 'a real risk of abuse in allowing even well-intentioned stops to assist.'" Id. at 388 (quoting State v. DeArman, 54 Wn. App. 621, 626, 774 P.2d 1247 (1989)). "When in doubt, the balance should be struck on the side of privacy because the policy of the Fourth Amendment is to minimize governmental intrusion into the lives of citizens." Id. at 394-95; see also Rankin, 151 Wn.2d at 694 ("[A]rticle I, section 7 of the Washington Constitution provides greater protection to individual privacy rights than the Fourth Amendment."). The increased protection afforded by article I, section 7 of the Washington Constitution necessarily requires less intrusion into Demmon's privacy. See Rankin, 151 Wn.2d at 694.

In Kinzy, our Supreme Court concluded that a police officer's decision to stop a potentially "at-risk youth" was reasonable and justified under the community caretaking exception because of the strong public interest in protecting the safety of children. 141 Wn.2d at 389. The officer subjectively believed the defendant was under the age of 13, in a high narcotics area of downtown Seattle late at night, and in the presence of an adult male known by the officer to be involved with narcotics. Id. at 388-89. The Supreme Court deemed the initial stop to be an appropriate act of community caretaking; otherwise, "a police 'officer could be considered derelict by not acting promptly to ascertain if someone needed help.'" Id. at 389 (emphasis omitted) (quoting State v. Gocken, 71 Wn. App. 267, 276, 857 P.2d 1074 (1993), review denied, 123 Wn.2d 1024, 875 P.2d 635 (1994)).

However, when it became clear to the officer that the youth did not welcome the interaction, the officer's decision to grab the youth by the arm changed the encounter to a warrantless seizure. Id. at 390. The Court concluded the seizure was unreasonable because the interest in maintaining the safety of children did not outweigh the defendant's constitutional right to freedom of association and movement. Id. at 392-93.

Similar to Kinzy, we must balance the public's interest in securing the safety of individuals protected by restraining orders with the protected individuals' freedom of association and movement. In this case, Sgt. Breault's inquiry into Demmon's identity crossed the line. Demmon did not want to reveal her identity. The first time he asked for her name, she mumbled something under her breath. The second time he asked, she stated clearly she did not want to give her name. When he asked a third time, she again declined to identify herself and, only at that point, explained that she had outstanding felony warrants. Even if Sgt. Breault's concern had been for the health and safety of a potential domestic violence victim, when Demmon affirmatively declined to identify herself, Sgt. Breault violated her article I, section 7 privacy rights by continuing to ask for her identification.

When an unconstitutional seizure occurs, "all subsequently uncovered evidence becomes fruit of the poisonous tree and must be suppressed." Allen, 138 Wn. App. at 469 (quoting State v. Ladson, 138 Wn.2d 343, 359, 979 P.2d 833 (1999)). The methamphetamine and heroin were discovered as a result of the unlawful seizure. Therefore, the trial court erred in denying Demmon's motion to suppress.

We reverse Demmon's conviction for possession of a controlled substance committed while on community custody and remand the case for an entry of an order of dismissal.

Andrus, J.

WE CONCUR:

Chun, J.

Becker, J.